Filed 8/7/14  In re B.G. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re B.G., a Person Coming Under the Juvenile Court Law. | B254444 (Los Angeles County Super. Ct. No. YJ36734) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>B.G.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Irma J. Brown, Judge.  Affirmed.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant, 16-year-old B.G., appeals from the juvenile court's order continuing wardship (Welf. & Inst. Code, § 602) after sustaining a petition alleging he unlawfully drove or took a vehicle in violation of Vehicle Code section 10851, subdivision (a), a felony. In part because B.G. was on probation at the time he committed the offense, the juvenile court placed him in Camp Community Placement for a period not to exceed three years eight months. B.G. filed a timely notice of appeal. We affirm the juvenile court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts*.

On January 4, 2014, Jose Salinas Jimenez's 2007, green, Nissan Frontier with a California license plate bearing the numbers 8G34725 was taken from his Long Beach home. In addition to his truck, "[a] laptop, $10 in change, . . . a sweater or sweatshirt" and a key to the truck were stolen from Jimenez's residence.

When Jimenez was asked if he had ever given B.G. permission to take his truck, Jimenez responded, "No." When Jimenez was then asked if he had ever seen B.G. before, he again responded, "No."

At some point in early January 2014, 16-year-old D.L. had been riding in the back passenger seat of a truck being driven by B.G. After B.G. had picked up two additional passengers, the truck was "pulled over" by police. B.G. stopped the truck, then told D.L. and the other two passengers, " 'We got to run.' "

On January 6, 2014, Los Angeles Police Officer Christopher Lopez and his partner, Rodrigo Lopez, were on patrol near the intersection of Grape Street and 101st Street when they conducted a traffic stop of the green, Nissan truck with license plate No. 8G34725. As the officers pulled behind the truck, it "just stopped." Officer Christopher Lopez ordered the driver, B.G., as well as the passengers, to get out of the truck. The two officers then interviewed D.L. who told them that, as they were being pulled over, B.G. had stated, " 'Man, we got to run, this is a G-ride.' " Officer Christopher Lopez then explained that a " 'G-ride' " refers to a stolen car.

2

The officers transported B.G, D.L. and the other two passengers to the police station.  There, B.G. told Officer Christopher Lopez that a friend named Jordan Post had loaned him the truck.  As B.G. was driving to school, he saw D.L. and the others.  He decided to stop and offer them a ride.

After B.G. and the passengers had gotten out of the car, Officer Christopher Lopez inspected the interior of the truck.  There were "no broken windows," "no wires [had been] pulled," "the keyhole [had not been] shaved down" and there appeared to be "no parts missing."

2.  *Procedural history.*

On May 31, 2012, a petition filed pursuant to Welfare and Institutions Code section 602 alleged B.G. had committed second degree robbery in violation of Penal Code section 211, a felony (count 1) and grand theft in violation of Penal Code section 487, subdivision (c), a felony (count 2).  At proceedings held on July 10, 2012, B.G. admitted having committed grand theft as alleged in count 2, the petition was sustained and B.G. was declared a ward of the court.  The juvenile court then dismissed the allegation B.G. had committed the robbery and placed him at home on probation under various terms and conditions.

On January 7, 2014, a second Welfare and Institutions Code section 602 petition was filed alleging B.G. had unlawfully driven or taken a vehicle, a felony in violation of Vehicle Code section 10851, subdivision (a).  It was indicated that, should he be found to have committed the offense, he would continue to be a ward of the court.

A hearing was held on the matter on January 29, 2014.  After hearing testimony from the victim from whom the truck had been taken, one of the individuals who had been a passenger in the truck when it was stopped by police officers and one of the officers who took B.G. into custody after it was determined he had been driving the truck, the juvenile court indicated that, "based on the evidence that ha[d] been presented, [the court] . . . believe[d] there [was] sufficient evidence for [it] to conclude beyond a reasonable doubt that the allegations [in the petition were] true."  The juvenile court stated:  "I will sustain count 1.  I will sustain it as a felony.  It was a stolen car.  [B.G.]

3

was driving that car, and I think there is sufficient evidence for me to conclude that he knew it was a stolen car. [¶] He did not drive away in the car, but he did apparently talk about running away, which I think would be significant to the issue of whether or not he was aware that it was a stolen car. And according to the officer, [D.L.] also said that [B.G.] acknowledged that it was a G-ride, or stolen car. [¶] I would note that [D.L.] was a very reluctant witness. Frankly, I didn't understand all of his mutterings when he was getting on the witness stand and off, but it was clear from his demeanor that he did not want to testify. And so I think that that goes to bolster the significance and credibility of his testimony. [¶] So count 1 is found to be true."

When defense counsel then asked the juvenile court if it would consider reducing the crime to a misdemeanor "given the evidence in this matter, given that [B.G.] did not attempt to run, flee, evade or do anything and given the facts as they were[,]" the juvenile court refused. The court indicated there had been "evidence that [B.G.] did attempt to run," then noted he "was on probation at the time [the offense] occurred." The juvenile court then sent the matter to another department, indicating disposition of B.G.'s violation of the conditions of his probation and the present matter would be considered on February 3, 2014.

At proceedings held on February 11, 2014, the juvenile court indicated the matter was before it for disposition of the petition "found to be true on January 29th, a violation of [Vehicle Code section] 10851," as well as violations of probation admitted on October 28, 2013. The court indicated the recommendation was for camp.

B.G.'s counsel argued the juvenile court should consider releasing B.G. "back into the community to the home of his mother." B.G., who was about to become a father, had told his counsel "[h]e recognize[d] that it [was] time for him to turn his behavior around. . . ." Counsel continued: "He does have a child [on the way] and strongly wishes to get his life together for the benefit of his child so he can set a better example." B.G.'s counsel believed B.G "would be in a better position to be a better example to his child if he [were] allowed to do so in the community and in the home of his mother." The prosecutor, on the other hand, argued that, although he understood B.G. wished to "turn

4

his life around," the prosecutor believed that "[w]ith the way . . . he's been acting and the fact that he continues to come back in on violations . . . that maybe a camp placement is . . . the structure he needs to get himself in line so that when the child is born he [will] be out and not recommitting."

The juvenile court indicated that, "while [B.G.] has shown some recognition for his behaviors, he [has] demonstrated over a much more significant period of time a disregard for authority, for following court orders and complying with [the] terms and conditions of [his] probation [and] . . . rules within the home." The court then addressed B.G. and stated: "Becoming a parent is a major responsibility and you haven't [yet] learned to accept responsibility for your own behavior."

The juvenile court determined B.G. was "still described within section 602 of the Welfare and Institutions Code [and was to] remain[] a ward [of the court] pursuant to that section." The court then stated: "He's found to be in violation of probation. [¶] The order of home on probation made May 5, 2013, is terminated. [¶] Custody is taken from the parent and guardian and the minor is recommitted to the custody of the Probation Department for a new [mid-term, six-month] Camp Community placement . . . ." After indicating B.G. was subject to a number of additional terms and conditions, the juvenile court awarded him predisposition credit for 242 days then indicated it would consider an early release from camp after an additional 120 days if release was merited by a camp report. In any event, the juvenile court set an annual review date of February 10, 2015. It was then determined B.G. could not be held in physical confinement for a period in excess of three years eight months.

B.G. filed a timely notice of appeal from the trial court's order on February 11, 2014.

**CONTENTIONS**

After examination of the record, counsel appointed to represent B.G. filed an opening brief which raised no issues and requested this court to conduct an independent review of the record. By notice sent June 5, 2014, the clerk of this court advised B.G. to

5

submit within 30 days any contentions, grounds of appeal or arguments he wished this court to consider.  No response has been received to date.

## REVIEW ON APPEAL

We have examined the entire record and are satisfied counsel has complied fully with counsel's responsibilities.  (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

## DISPOSITION

The order continuing wardship is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.

6